UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHAD S.,

                                        Plaintiff,

v.                                                          5:18-CV-664
                                                            (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
  *Attorney for Plaintiff*
300 South State Street
Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.              SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
  *Attorney for Defendant*
26 Federal Plaza - Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Plaintiff Chad S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Social Security Disability Insurance ("SSDI").

(Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which

sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Both parties have filed briefs.  (Dkt. Nos. 8, 9.)  Oral argument was not heard.  Pursuant to 28

U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. Nos. 5, 6.)  For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is granted and the Court remands the Commissioner's decision with instructions to undertake a *de novo* review.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff was born on April 22, 1972, and lives in Oneida, New York.  On May 16, 2016, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning May 2, 2016.  (Administrative Transcript at 10.)[1]  In his application, Plaintiff asserted he suffered from post-traumatic stress disorder ("PTSD") and irritable bowel syndrome ("IBS").  (T. at 168.)

Plaintiff's application for benefits was denied on August 3, 2016.  (T. at 69-73.) Thereafter, Plaintiff timely filed a written request for a hearing.  (T. at 76-77.)  A hearing was held on February 12, 2018, in front of Administrative Law Judge ("ALJ") Jeremy G. Eldred.  (T. at 34-55.)  Plaintiff appeared at the hearing with his attorney and testified.  (T. at 34, 37-50.) Robert Baker, a vocational expert ("VE"), also testified.  (T. at 50-54.)  On March 1, 2018, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act, since May 2, 2016, the alleged onset date.  (T. at 10-28.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

---

[1]  The Administrative Transcript is found at Dkt. No. 7.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  Page references to the parties' briefs identified by docket number are to the numbers the Court's CM/ECF electronic docketing system automatically assigns.

April 6, 2018.  (T. at 1-6.)  Plaintiff timely commenced this action challenging the Commissioner's final decision on June 6, 2018.  (Dkt. No. 1.)

### B. Non-Medical Evidence – Hearing Evidence

Plaintiff lives with two of his children and his girlfriend in Oneida, New York.  (T. at 38.) He has a high school diploma and several years of college education but no college degree.  (T. at 38-39.)  Plaintiff testified he was able to drive himself to the hearing and can drive himself to appointments but occasionally will have his girlfriend drive him.  (T. at 38.)

Plaintiff stated the last job he had prior to the disability onset date was as the regional vice president for Access Federal Credit Union.[2]  (T. at 39.)  Plaintiff worked at Access Federal Credit Union for 11 years until he was fired in April 2016.  (*Id*.)  According to Plaintiff, he was having a hard time getting to work on time, becoming irritable with staff and customers, and off task a lot of the time.  (T. at 46-47.)  He noted these issues had increased over the last six months before getting fired.  (T. at 47.)  Plaintiff stated his motivation level was low at work and low after he left work.  (*Id*.)

Plaintiff testified that he mainly suffers from complications related to his PTSD and he also has major depressive disorder, sleep apnea, and IBS.  (T. at 41-42.)  As to his PTSD, Plaintiff stated he has been treated through the Veterans Administration ("VA").  (T. at 42.) Specifically, Plaintiff noted he sees Dr. Khan at Behavioral Health Office and he receives counseling every two weeks.  (*Id*.)  Plaintiff also reported he takes medication related to his PTSD and depression and it helps.  (*Id*.)  He stated his PTSD and depression cause him to stay in his house and isolate himself from most things.  (*Id*.)  Plaintiff also stated he changed out all the locks on his doors to be heavier dead bolts and installed a security system because of his PTSD.

---

[2]  Before working at Access Federal Credit Union, Plaintiff was a broker for three years and he also worked as an office manager at Alliance Bank.  (T. at 40-41.)

(T. at 49.)  Plaintiff reported having nightmares, but they are controlled with medication.  (*Id.*)  According to Plaintiff, he gets anxiety when he is around people, he is irritable, and has a hard time relating to others.  (T. at 42-43.)

With respect to Plaintiff's sleep apnea, he reported he uses a CPAP machine that helps but he is still tired.  (T. at 43.)  Plaintiff further noted he has medication for IBS that controls his symptoms "for the most part" but he was having "accidents."  (*Id.*)  He stated he has three to five bowel movements a day.  (T. at 50.)  According to Plaintiff, his IBS was more active at work and stress can cause his symptoms to reappear.  (*Id.*)

Plaintiff noted the medications he takes for these problems cause him to be tired and "kind of flat."  (T. at 43.)  Plaintiff testified his short-term memory is affected and he has forgotten to let his dog back in his house and forgets people's names.  (T. at 43-44.)  Plaintiff further stated he can concentrate for an hour or two on "some days."  (T. at 44.)

Plaintiff noted he does not see his friends much anymore, but some friends check on him "from time to time."  (*Id.*)  He does not keep in touch with some of his older friends with whom he used to hunt because he no longer hunts.  (*Id.*)  Plaintiff stated he does not have any desire to see his friends.  (T. at 50.)  Plaintiff also does not go to his children's school activities.  (*Id.*)

With respect to his physical limitations, Plaintiff has plantar fasciitis which makes it difficult to walk in the morning, but he has not walked too far in a couple of years.  (T. at 44.)  His back gets sore when lifting heavy things and he has a problem with his left shoulder that limits his ability to lift things over shoulder level.  (T. at 44-45, 48.)  Plaintiff stated he hurt his left shoulder in Iraq.  (T. at 48.)  Plaintiff can, however, empty a washing machine.  (T. at 45.)  He gets stiff after an hour or two of sitting in a chair.  (*Id.*)  Plaintiff is treating with Dr. Ogrinc for his physical limitations.  (T. at 47.)

On a general day, Plaintiff will get up before 7:00 a.m., help his kids get ready for school, and unload the dishwasher or do a load of laundry as needed. (T. at 45.) He hires help with heavy cleaning. (*Id.*) He also reported he and his 16-year-old daughter make dinner together and he can make simple dinners himself if necessary. (*Id.*) He hires someone to mow his lawn and plow his driveway. (*Id.*) Plaintiff did note he has an interest in gardening and he enjoys taking care of some apple trees he planted after returning from Iraq. (T. at 46.) He orders his groceries online and picks them up at the store. (*Id.*) Plaintiff stated he likes to go for walks with his dog and will sometimes just sit outside with his dog. (T. at 47.)

    **C.    Medical Evidence[3]**

The record includes medical opinions and/or medical source statements from the following individuals: Jacqueline Santoro, Ph.D. ("Dr. Santoro"), Brian Cole M.D. ("Dr. Cole"), A. Dipeolu, Ph.D. ("Dr. Dipeolu"), clinical psychologist Deborah Anne Diniro ("Dr. Diniro"), Rahat Khan M.D. ("Dr. Khan"), and Maribeth Ogrinc, M.D. ("Dr. Ogrinc").

    <u>Dr. Santoro</u>

Dr. Santoro completed a psychiatric evaluation of Plaintiff dated July 6, 2016. (T. at 475-79.) She opined Plaintiff would have no limitation to follow and understand simple directions and instructions and perform simple tasks. (T. at 477-78.) Dr. Santoro noted mild limitations in maintaining attention and concentration, learning new tasks, and maintaining a regular schedule. (T. at 478.) She indicated mild-to-moderate difficulties making appropriate decisions and moderate difficulties in relating with others and dealing with stress. (*Id.*) Dr.

---

[3] The Court has reviewed the volumes of medical records in the file relating to the period at issue in this case. However, the pertinent issues in this action are related to the ALJ's treatment of the various medical opinions in the record. Thus, rather than reciting the multitude of evidence in the record at the outset, the court will discuss the relevant details below, as necessary, to address the issues Plaintiff raised.

Santoro further noted Plaintiff's psychiatric problems "may significantly interfere with his ability to function on a daily basis."  (*Id.*)

### Dr. Cole

Dr. Cole completed an internal medicine examination of Plaintiff dated July 6, 2016.  (T. at 481-84.)  He opined Plaintiff had a moderate restriction for squatting and kneeling, heavy lifting, and carrying.  (T. at 484.)

### Dr. Dipeolu

The State of New York retained Dr. Dipeolu to review Plaintiff's medical file and provide an opinion as to Plaintiff's impairment.  (T. at 56-67.)  In Dr. Dipeolu's August 3, 2016 report, he states Plaintiff "is able to follow/understand simple directions; maintain attention/concentration to perform simple tasks; relate to others for brief, superficial interactions and for ordinary levels of supervision; and adjust to routine work changes."  (T. at 61.)

### Dr. Diniro

Dr. Diniro completed a "Disability Benefits Questionnaire" for the VA associated with Plaintiff's service-related PTSD on August 22, 2016.  (T. at 532-41.)  Dr. Diniro noted Plaintiff had been diagnosed with "PTSD – chronic, moderate-severe."  (T. at 533.)  She opined Plaintiff's PTSD resulted in "occupational and social impairment with reduced reliability and productivity."  (*Id.*)  Dr. Diniro stated, though Plaintiff is not "totally impaired, [his] PTSD symptoms are likely to contribute to problems with purposeful activity and employability."  (T. at 540.)  Accordingly, she concluded Plaintiff "would likely have problems securing and maintaining formal employment at this time."  (*Id.*)

<u>Dr. Khan</u>

Dr. Khan is Plaintiff's psychiatrist and he completed a medical source statement dated June 1, 2017. (T. at 486-91.) He noted he was seeing Plaintiff for psychotherapy and medication management relative to Plaintiff's service-related PTSD and depression. (T. at 486.) Dr. Khan indicated Plaintiff was taking Prozac, Bupropion SA, Ambien, and Prazosin. (*Id.*) He noted these medications caused drowsiness and fatigue. (*Id.*) Dr. Khan described Plaintiff as having ongoing symptoms of PTSD including hypervigilance and avoidance of traumatic cues. (*Id.*) He indicated Plaintiff was "[s]eriously limited" in his ability to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms." (T. at 488.) Dr. Khan further opined Plaintiff was "[s]eriously limited" in his ability to "[d]eal with normal work stress" and "[d]eal with stress of semiskilled and skilled work." (T. at 488-89.) He indicated Plaintiff would be seriously limited in his ability to travel in an unfamiliar place, use public transport, and maintain socially appropriate behavior. (T. at 489.) In explaining his limitations, Dr. Khan noted Plaintiff's PTSD symptoms limit his ability to handle stress and trauma. (T. at 489.)

Dr. Khan additionally noted Plaintiff's depression and PTSD increase his sensitivity to any stress. (*Id.*) In considering the demands of work Plaintiff would find stressful, Dr. Khan endorsed the following: working with other people, dealing with the public, being criticized by supervisors, and fear of failure at work. (T. at 490.) Dr. Khan reported Plaintiff would be "off task" more than 25% of a normal workday and incapable of low stress work due to his PTSD. (*Id.*) He further indicated Plaintiff would likely miss more than four days a month due to his impairments. (*Id.*)

Dr. Khan provided an additional statement dated January 18, 2018, indicating he was continuing to treat Plaintiff for PTSD and depression.  (T. at 604.)  Dr. Khan noted Plaintiff's depression symptoms were currently in control but could easily be decompensated by any stressors.  (*Id*.)  He stated Plaintiff was in continuous need of psychotropic medication and was to continue working on processing trauma via psychotherapy.  (*Id*.)

Dr. Ogrinc

Dr. Ogrinc provided a medical source statement dated June 28, 2017.  (T. at 493-96.) She noted Plaintiff was diagnosed with obstructive sleep apnea, irritable bowel syndrome, hyperlipidemia, hypertension, PTSD, depression, and insomnia.  (T. at 493.)  Dr. Ogrinc indicated Plaintiff's medications for mental health make him drowsy.  (*Id*.)  She opined Plaintiff's depression, anxiety, and PTSD affect his physical condition.  (T. at 494.)  As to his physical limitations, Dr. Ogrinc stated Plaintiff would have no impairment walking, could sit for two to three hours before needing to stand, and could stand for two hours before needing to sit down.  (*Id*.)  She noted Plaintiff needed a job that permits shifting positions and that includes periods of walking around.  (*Id*.)  Dr. Ogrinc opined Plaintiff would need four to five unscheduled breaks each day lasting 15 minutes due to his IBS.  (*Id*.)

Dr. Ogrinc noted Plaintiff could rarely lift 50 lbs., occasionally lift 20 lbs., and frequently lift 10 lbs. or less.  (T. at 495.)  She also noted Plaintiff should never climb ladders and rarely crouch/squat, stoop, and twist.  (*Id*.)  Dr. Ogrinc indicated Plaintiff could not use his left arms for reaching in front of his body or over his head.  (*Id*.)

Dr. Ogrinc reported Plaintiff would be off task more than 25% of a typical work day.  (T. at 496.)  She opined Plaintiff was incapable of low stress work because of Plaintiff's PTSD.  (*Id*.) Further, Dr. Ogrinc noted Plaintiff would miss more than four days per month due to his

condition.  (*Id*.)  Dr. Ogrinc stated Plaintiff's PTSD impacts his ability to handle stressful situations and be around people.  (*Id*.)

Dr. Ogrinc provided an additional letter dated January 18, 2018, wherein she stated Plaintiff's medical conditions, and the side effects of the medicine to treat those conditions, interfere with his ability to be gainfully employed.  (T. at 605.)  She noted Plaintiff's medical status and work-related limitations did not change from the date of her previous evaluation on June 28, 2017, until the date of this letter.  (*Id*.)

**D.**     **The ALJ's Decision and the Parties' Contentions**

At step-one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 2, 2016, the alleged disability onset date.  (T. at 12.)  Continuing to step-two, the ALJ determined Plaintiff had the following severe impairments: IBS, obstructive sleep apnea, obesity, PTSD, and depressive disorder.  (*Id*.)  At step-three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app'x. 1.  (T. at 14.)

Thereafter, the ALJ, "[a]fter careful consideration of the entire record," determined Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b), except he has the following additional limitations: he can perform only simple, routine tasks; can make only simple work-related decisions; and can interact with supervisors, co-workers, or the public only occasionally.

(T. at 15.)  In reaching his RFC determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ."  (*Id*.)  The ALJ also considered opinion evidence.  (*Id*.)

After finding Plaintiff could not perform his past relevant work at step-four, the ALJ concluded, given Plaintiff's age, education, work experience, RFC, and the VE's testimony, there are jobs existing in significant numbers in the national economy Plaintiff can perform. (T. 26.) Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since May 2, 2016. (T. 27.)

Plaintiff makes two principal arguments in support of his action. First, Plaintiff asserts substantial evidence does not support the ALJ's RFC because he failed to adequately account for the severity of Plaintiff's mental impairments and erred in weighing opinion evidence. (Dkt. No. 8 at 3, 14-21.[4]) Next, Plaintiff argues the ALJ did not properly analyze Plaintiff's subjective symptomology. (*Id*. at 3, 22-24.)

Defendant, on the other hand, asserts substantial evidence supports the ALJ's decision and he did not commit an error in law. (Dkt. No. 9.)

## II.    APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

---

[4]  Though styled as two separate issues, the Court finds Plaintiff's first two "Issues Presented" functionally require the same analysis relative to whether the ALJ committed a legal error in handling the medical evidence in this case relative to Plaintiff's mental health conditions. Therefore, the Court will consider these arguments under a single heading.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.      Standard for Benefits[5]**

To be considered disabled, a plaintiff-claimant seeking SSDI benefits must establish that

he or she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4).  Under that five-step

sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

---

[5]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title
II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

## III.    ANALYSIS

### A.    Medical Opinion Evidence Related to Plaintiff's PTSD

The main issue before the Court is whether the ALJ properly weighed the medical opinions related to Plaintiff's PTSD. Specifically, two of Plaintiff's treating physicians opined Plaintiff would not be able to perform even "low stress" work. (T. at 490 (Dr. Khan), 496 (Dr. Ogrinc).) In denying benefits, the ALJ principally relied on the opinions of the three Social Security Administration ("SSA") consultants: Drs. Santoro and Cole who each examined Plaintiff for a single day and Dr. Dipeolu who did not personally examine Plaintiff and principally relied on Drs. Santoro's and Cole's opinions when formulating his own. Plaintiff contends on appeal the ALJ did not adequately explain why he accorded so much weight to the SSA consultants' medical opinions, while giving less weight to the opinions of Plaintiff's treating physicians. Though the Court's function is not to re-weigh the medical opinion evidence, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998), where the ALJ's assessment of various medical opinions appears inconsistent, and his reasons for relying on certain opinion evidence lacks adequate explanation, remand is appropriate. This is especially true where, as

here, the ALJ favored opinion evidence from non-treating, State agency consultants in favor of Plaintiff's treating physicians. *See, e.g., Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

To that end, the SSA prefers the medical opinions of a physician who is engaged in the primary treatment of a claimant. Thus, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. *See* 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in

original) (quoting *Halloran*, 362 F.3d at 33). The failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

As described above, the ALJ was confronted with two opinions from Plaintiff's treating physicians suggesting Plaintiff's PTSD would render him incapable of coping with stress. First, Dr. Khan indicated, among other things, Plaintiff was sensitive to dealing with stressful situations, would be off task more than 25% of a work day, and would miss more than four days a month. (T. at 490.) Similarly, Dr. Ogrinc opined Plaintiff's inability to handle stress significantly limited his employability. (T. at 496.) To that end, like Dr. Khan, Dr. Ogrinc noted Plaintiff would be off task more than 25% of a work day and would miss more than four days a month. (T. at 490, 496.) Furthermore, both Drs. Khan and Ogrinc reported Plaintiff would be unable to handle even "low stress" work. (T. at 490, 496.)

The ALJ rejected Drs. Khan's and Ogrinc's opinions and assigned them "little weight" (T. at 20, 23), however, a critical review of the ALJ's analysis reveals his reasoning is flawed and based on an incorrect application of the SSA's regulations.

The ALJ stated Dr. Khan's opinion was not "well supported" "given the few abnormal objective clinical findings . . . including findings from Dr. Khan's own mental status examinations." (T. at 24.) In support of this statement, the ALJ asserted "Dr. Khan noted on repeat occasions that the claimant's PTSD was in partial or unspecified remission, with full remission by March 2016." (*Id*. (citing (T. at 255, 260).) However, the ALJ mischaracterized

these cited medical records.  To wit, the medical record the ALJ cited ostensibly to indicate

Plaintiff's PTSD was in "partial or unspecified remission" states as follows:

```
08/05/2015    SYRACUSE V      SY-OMH DR KHAN                  SERVICE CONNECTED
   Provider: KHAN,RAHAT (P)
   Diagnosis: POSTTRAUMATIC STRESS DISORDER (ICD-9-CM 309.81); PTSD, Chronic
              (P)
              MAJOR DEPRESSIVE AFFECTIVE DISORDER, RECURRENT EPISODE, IN
                PARTIAL OR UNSPECIFIED REMISSION (ICD-9-CM 296.35); MDD, Recur,
                Part Remiss
   Procedure: 99213-OFFICE/OUTPATIENT VISIT EST; Expanded Problem Focus (1)
```

(T. at 260.)  Notably, though the record states Plaintiff's major depressive affective disorder is in

partial or unspecified remission, it also indicates Plaintiff's PTSD is "[c]hronic."  (*Id.*)  The ALJ

made the same error with respect to the record he cited that supposedly demonstrates Plaintiff's

PTSD is in "full remission":

```
03/29/2016    SYRACUSE V      SY-OMH DR KHAN                  SERVICE CONNECTED
   Provider: KHAN,RAHAT (P)
   Diagnosis: POST-TRAUMATIC STRESS DISORDER, CHRONIC (ICD-10-CM F43.12);
              PTSD, Chronic
              MAJOR DEPRESSIVE DISORDER, RECURRENT, IN FULL REMISSION
                (ICD-10-CM F33.42); Major Depressive Disorder,Recurrent,In Full
                Remission (P)
   Procedure: 99213-OFFICE/OUTPATIENT VISIT EST; Expanded Problem Focus (1)
```

(T. at 255.)  Again, Plaintiff's PTSD is noted as "[c]hronic."  (*Id.*)  Indeed, multiple other

medical records categorize Plaintiff's PTSD as a "chronic" impairment.  (*See, e.g.,* T. at 533 (Dr.

Diniro's disability questionnaire).)

The ALJ similarly selectively mischaracterized the following letter Dr. Khan wrote on

January 18, 2018, purportedly for evidence that Plaintiff's depressive symptoms are in control:



To whom it may concerns.

I am writing this letter at the request of Mr. S█████C████████ ( DOB ████████72) after signing an inform consent form. Patient is treated at Syracuse behavioral health outpatient clinic by Dr. Khan for major depression disorder in service related PTSD. Depression symptoms are currently in control but could be easily decompensated by any stressors. In regards to PTSD patient continued to be vigilant to trauma memories and is avoiding circumstances that brings the memories back. Patient is in continuous need of psychotropic medication and keep working on processing the trauma via psychotherapy. As of seen last on October 23, 2017 patient was not an imminent threat to self or others.

Feel free to contact me for any questions.

Sincerely,

*Rahat Khan, MD*
**Staff Psychiatrist**
**Behavioral Health Outpatient Clinic**
**620 Erie Blvd West**
**Syracuse, NY 13210**
**(315)425-4400 Ext 52718**
Rahat.Khan@va.gov

01-18-18

(T. at 604 (redaction added).) Though the letter describes Plaintiff's depression as "in control," it also states Plaintiff could "easily be decompensated by any stressors." (*Id*.) Importantly, Dr. Khan noted Plaintiff's PTSD required continuous "psychotropic medication" and "processing via psychotherapy." (*Id*.)

The ALJ conflated Plaintiff's PTSD and his major depressive syndrome rather than treating them as separate impairments. This error resulted in the ALJ ignoring evidence tending to support Dr. Khan's opinion related to Plaintiff's inability to deal with stress because of his chronic PTSD. *Cahill v. Colvin*, No. 12 CIV. 9445, 2014 WL 7392895, at *16 (S.D.N.Y. Dec. 29, 2014) (noting that "[a]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error" (internal citation omitted)). In other words, the ALJ's explanation for rejecting Dr. Khan's opinion was factually flawed and logically inconsistent.

The ALJ articulated a similarly erroneous justification to reject Dr. Ogrinc's opinion related to Plaintiff's PTSD. Specifically, the ALJ stated "repeat mental status examinations show normal attention, concentration, and memory skills." (T. at 23.) The ALJ failed to cite these records and the ALJ does not articulate why records related to Plaintiff's attention, concentration, and memory relate to Plaintiff's ability to handle a stressful workplace. In other words, the ALJ did not point to a single record that is inconsistent with Dr. Ogrinc's opinion that Plaintiff's PTSD rendered him incapable of performing in a low-stress work environment. *See* 20 C.F.R. § 404.1520b (noting that a record is "inconsistent . . . when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques"). Here, it is not inconsistent for Plaintiff to have an intact memory but an inability to cope in a stressful work environment. Thus, the ALJ's purported justification is not a "good reason" to discredit Dr. Ogrinc's assessed limitations related to Plaintiff's inability to handle a stressful workplace. *Smith v. Comm'r of Soc. Sec.*, No. 5:17-CV-0488, 2018 WL 1684337, at *5 (N.D.N.Y. Apr. 5, 2018) (stating "[t]he failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand" (internal quotation marks and citation omitted)).

The ALJ also appears to discredit Drs. Khan's and Ogrinc's opinions because he found they are inconsistent with Plaintiff's report of daily activities. (T. at 17-18.) However, none of the limited daily activities Plaintiff acknowledged demonstrate his capacity for dealing with workplace stress. In any event, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08–CV–643, 2011 WL 381949, at *6–7 (N.D.N.Y. Jan. 19, 2011) (Rep't–Rec.),

*adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).  Instead, the ALJ improperly substituted his

opinion related to the significance of Plaintiff's reported daily activities for that of a medical

expert.  *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose

among properly submitted medical opinions, but may not set his own expertise against that of

physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d

Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute

his own judgment for competent medical opinion)).

      Defendant argues the Court should affirm the ALJ's decision because it is consistent with

the opinions of the consultative examiners and those reports can—under the appropriate

circumstances—constitute substantial evidence.  (Dkt. No. 9 at 10-11.)  However, the Second

Circuit has consistently "cautioned that ALJs should not rely heavily on the findings of

consultative physicians after a single examination."  *Selian*, 708 F.3d at 419 (citing *Cruz v.

Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  Moreover, the opinions of Drs. Dipeolu, Santoro, and

Cole all pre-date the opinions of Plaintiff's treating physicians.  Thus, these consultative

examiners did not review the medical source statements from Plaintiff's treating providers.

Accordingly, the ALJ's statement that Dr. Dipeolu conducted "a comprehensive review of the

record" is factually inaccurate.  (T. at 22.)  Consequently, the ALJ erred in relying on the

opinions of Drs. Dipeolu, Santoro, and Cole without considering whether the opinions of those

doctors may have changed had they considered the more recent medical opinions from Plaintiff's

treating providers.

      In sum, the ALJ failed to follow any of the steps in the process outlined in 20 C.F.R.

§ 404.1527(c).  The ALJ did not provide any acceptable explanations for why Drs. Ogrinc's and

Khan's opinion were not "well-supported by medically acceptable . . . techniques" or

"inconsistent with the other substantial evidence," 20 C.F.R. § 404.1527(c)(2), nor did he explicitly consider any of the factors for determining the weight given to a non-controlling opinion, *see id*. § 404.1527(c)(2)(i), (2)(ii), (3)–(6). Because the ALJ rested his rejection of Drs. Ogrinc's and Khan's opinion on flawed reasoning and failed to provide any other "good reasons" for rejecting their opinions, the ALJ erred.[6]

### B.      The ALJ's Assessment of Plaintiff's Symptoms

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the plaintiff's subjective symptomology. To satisfy the substantial evidence rule, the ALJ's assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 416.929; *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2.[7] This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the plaintiff's other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the plaintiff's pain cannot be found to affect the plaintiff's ability to do basic work activities. *Id.* An individual's statements about her symptoms are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is

---

[6]  Moreover, because a vocational expert in this case testified Plaintiff could perform no jobs available in large numbers in the national economy if he had to miss four or more days of work per month and be off task for 25% of a workday (T. at 54), the ALJ's failure to provide adequate reasons for discrediting Drs. Ogrinc's and Khan's opinions was not harmless, and remand is warranted.

[7]  SSR 16-3p superseded SSR 96-7p effective March 28, 2016. However, SSR 96-7p remains relevant to Plaintiff's claim because it was filed before March 28, 2016.

disabled. *See Grewen v. Covlin*, No. 1:11-CV-829, 2014 WL 1289575, at *4 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Id.* (citation omitted).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587. "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

Here, in rendering his decision, the ALJ found Plaintiff's medically determined impairment could reasonably be expected to cause Plaintiff's alleged symptoms. (T. at 16.) However, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (*Id.*) The Court finds that the ALJ's improper rejection of Plaintiff's treating physician's medical opinions tainted his analysis of Plaintiff's subjective symptomology. To that end, Drs. Ogrinc's and Khan's opinions relative to Plaintiff's ability to handle stress lend a medical diagnosis to Plaintiff's testimony that he "isolated [himself] from most things" (T. at 42) and would get anxious around people (T. at 43). Accordingly, on remand, the ALJ is directed to take a fresh look at Plaintiff's subjective symptomology after properly considering and weighing the medical opinions in the record.

## IV. REMAND

Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal

standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id*.

Here, the Court finds the ALJ improperly weighed medical opinion evidence and, as Plaintiff requests, it is appropriate to remand for proper evaluation of Plaintiff's treating physicians' opinions and his subjective symptomology.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of Plaintiff's residual functional capacity and other further proceedings, consistent with this Decision and Order.

Dated: August 5, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge